UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
JEFFREY BOEHNER, et al.            :
                                   :
          Plaintiffs,              :
                                   :
     -against-                     :
                                   :
LYN HEISE, et al.                  :
                                   :
          Defendants.              :
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/14/09

03 Civ. 05453 (THK)

MEMORANDUM OPINION AND
ORDER

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiffs Jeffrey Boehner, Tom Fok, and Springland Trading, Inc. (collectively "Plaintiffs") brought this action alleging that Defendants Lyn Heise, Joan Ecker, and Ginseng Board of Wisconsin (collectively "Defendants"), wrongly interfered with, and gained a competitive edge over, Plaintiffs' ginseng trade business, by leveling false, defamatory, and libelous accusations against Plaintiffs to convince the United States Customs Service to detain shipments of Plaintiffs' ginseng product. Plaintiffs contend that they suffered severe economic harm as a result of Defendants' defamatory statements. In addition to their defamation claims, Plaintiffs assert claims of breach of contract and tortious interference with business relations. (See Complaint ("Compl.") passim.)

On July 15, 2008, the Court issued an Order precluding Plaintiffs from seeking damages in this action, as a result of Plaintiffs' failure to comply with discovery Orders issued by the Court, failure to respond to Defendants' letter-application seeking sanctions as a result of Plaintiffs' failure to provide required

discovery, and failure to respond to Court telephone calls seeking to arrange a conference with the parties. (See Order, dated July 15, 2008 ("July 15 Order").)

On July 30, 2008, the Court ordered the dismissal of this action, after Plaintiffs failed to comply with a provision of the July 15 Order requiring Plaintiffs to inform the Court whether they intended to proceed with their claim for injunctive relief. (See Order, dated July 30, 2008 ("July 30 Order").)

Presently before the Court is Plaintiffs' motion, pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, seeking relief from the July 30 Order of Dismissal and the July 15 Preclusion Order. Plaintiffs contend that both Orders were the result of the ineffective assistance of their counsel, who was suffering from severe psychological problems. Defendants oppose the motion.

For the reasons set forth below, Plaintiffs' motion is granted in part.

### BACKGROUND

In August of 2005, David J. Hoffman, Esq. appeared in this action on behalf of Plaintiffs. On January 19, 2006, Defendants' motion to dismiss the Complaint and for transfer of venue was denied by the Hon. Deborah A. Batts, U.S.D.J. On February 13, 2008 the parties consented to proceed before this Court for all purposes, pursuant to 28 U.S.C. § 636(c).

2

A dispute arose as to the adequacy of Plaintiffs' responses to Defendants' discovery requests and, in an Order dated May 8, 2008, the Court directed Plaintiffs to produce all documents responsive to Defendants' requests by May 16, 2008.   After receipt of Plaintiffs' response, Defendants argued that Plaintiffs had not provided adequate documentation of their claimed damages, and the Court agreed.   By Order dated June 3, 2008, the Court directed Plaintiffs to provide Defendants with an itemization of the damages being claimed and all documents in support of their claimed damages, by no later than June 13, 2008.   Plaintiffs were specifically advised that failure to produce the information would result in an order precluding any claim for damages.

In a letter dated June 20, 2008, Defendants advised the Court that they had not received any document production from Plaintiffs until June 16, and the documents they ultimately did receive were not in compliance with the Court's June 3 Order.   Defendants therefore sought an order precluding the award of damages or, alternatively, an order striking the Complaint and dismissing the action.   Although this Court's rules require that a party respond in writing to any requests to the Court within three days, the Court received no response from Plaintiffs' counsel.   Instead, on June 25, 2008, he telephoned the Court and requested a settlement conference.   Plaintiffs' counsel was instructed that he must first submit a response to Defendants' letter-request.   A response was

not submitted until July 3, 2008, and, in that response, Plaintiffs' counsel merely attempted to explain his untimely document production and failed to address the substantive inadequacy of the production.

The Court's staff placed calls to Plaintiffs' counsel on July 3 and July 8, 2008, in an effort to schedule a conference to address Defendants' complaints regarding Plaintiffs' document production. Although messages were left instructing counsel to call the Court, he failed to do so. On July 15, the Court's staff attempted, once again, to contact Plaintiffs' counsel, but was unable to leave a voicemail because his mailbox was full. As of July 15, 2008, Plaintiffs' counsel had still not responded to the Court's inquiries.

In light of these circumstances, the Court issued the July 15 Order, precluding Plaintiffs from seeking damages and requiring Plaintiffs to notify the Court by July 22 as to whether they intended to proceed with their claim for injunctive relief. The Order specifically advised Plaintiffs that "unless [they] notify the Court by July 22 that they intend to proceed with their claim for injunctive relief, the Court will enter an Order of Dismissal in this action." (July 15 Order ¶ 9.) Having not heard from Plaintiffs by July 30, the Court entered the July 30 Order dismissing the case with prejudice.

Plaintiffs now contend that they did not learn of the

4

dismissal until late in August of 2008, two months after-the-fact. (See Declaration of Tom Fok, dated Nov. 7, 2008 ("Fok Decl."), ¶ 12.)  They eventually contacted an attorney, Po Yuen, Esq., who had represented them in this action prior to Mr. Hoffman's representation.  Plaintiffs retained the law firm of Yuen Roccanova Seltzer & Sverd LLP, which filed a notice of appearance and the instant motion. (See Declaration of Joseph T. Roccanova, Esq. in Support of Motion Pursuant to Rule 60(b)(6), dated Dec. 10, 2008 ("Roccanova Decl."), ¶ 11.)

Plaintiffs contend that their former counsel, David Hoffman, was suffering "mental incapacitation and psychological inability to render effective assistance of counsel to plaintiffs at the time that the Preclusion Order and Order of Dismissal were issued, and during the times and events leading to their issuance. . . ." (See id. ¶ 12.)  Mr. Roccanova, Plaintiffs' current counsel, represents that in August, 2008 he received "a confusing telephone call from Mr. Hoffman," who claimed that he was in upstate New York and asked Roccanova to check on the status of this action. (Id. ¶ 6.)  After determining that the Court had entered the Preclusion Order and Order of Dismissal, Roccanova attempted for several days to reach Hoffman, without success.  Each time he called Hoffman, he heard a recorded message advising that Mr. Hoffman's mailbox was full. Nevertheless, he e-mailed copies of the Court's Orders to Hoffman. (See id. ¶ 9.)

Mr. Hoffman has submitted a declaration in support of Plaintiffs' motion. (See Declaration of David J. Hoffman, Esq., dated Dec. 8, 2008 ("Hoffman Decl.").)  He asserts that "it was never [his] intention to abandon plaintiffs' claims or to allow them to be dismissed," and that the Preclusion Order and Order of Dismissal were "directly caused by an exacerbation of certain psychological problems that inhibited [his] ability to properly attend to [his] clients' interests in this case." (Id. ¶ 7.)  Mr. Hoffman attests that he has been suffering from various psychological difficulties for a number of years and, in the eighteen months immediately prior to the entry of the July 15 and July 30 Orders, his "psychological problems were seriously and progressively exacerbated." (Id. ¶ 8.)  In October, 2006, Hoffman's apartment was destroyed in a fire and he lost virtually all of his possessions.  Other difficult events followed and he became increasingly depressed and anxious.  Finally, he began experiencing debilitating anxiety attacks and severe insomnia. (Id.)  In April, 2008, he began receiving treatment from a psychologist.  However, shortly thereafter, he experienced a number of other emotional setbacks.  He lost his office in May, 2008, and, in June, 2008, lost a trial in which he was representing a client on a contingency basis.  According to Mr. Hoffman, he had put thousands of hours into the case over a period of four years. (Id. ¶ 9.)

Mr. Hoffman asserts that "[i]n the few weeks following [his]

June, 2008 loss of the trial, [his] mental state was so compromised that [he] ignored and stopped responding to communications, including the Court's telephone call, to avoid dealing with conflicts and confrontation." (Id. ¶ 10.)   Mr. Hoffman concedes that he ignored Defendants' application seeking preclusion and dismissal of this action, because he was "[u]nable to cope with the dispute due to [his] severely compromised mental state." (Id. ¶ 11.)   Mr. Hoffman further states that he did not become aware of the Court's July 15 and July 30 Orders until he was informed of them by Mr. Roccanova, whose assistance he sought.

Mr. Hoffman has since continued treatment with his psychologist, Dr. C. Edward Robins, in addition to enrolling in the Lawyer's Assistance Program of the New York City Bar Association. Dr. Robins diagnosed Mr. Hoffman as having Posttraumatic Depressive Reaction, depression, and anxiety, among other conditions. (See id. ¶ 13.)   Dr. Robins has submitted a copy of his Clinical Neuropsychological Evaluation of Mr. Hoffman, in addition to a brief letter and sworn declaration which opines that Mr. Hoffman's "psychological condition directly caused him to ignore pressing business and the realities of his professional life." (Declaration of Dr. C. Edward Robins, dated Nov. 11, 2008, ¶ 5.)

## DISCUSSION

### I. Rule 60 Legal Standard

Plaintiffs seek relief under Rule 60(b)(6), Fed. R. Civ. P.,

which provides that "the court may relieve a party or its legal representative from a final judgment . . . for . . . any . . . reason that justifies relief."

A motion under Rule 60(b) is "addressed to the sound discretion of the district court." Mendell in Behalf of Viacom, Inc. v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990) (citing Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)); Ovadiah v. New York Ass'n for New Americans, No. 95 Civ. 10523 (SS), 1997 WL 342411, at *5 (S.D.N.Y. June 23, 1997). Relief provided under Rule 60(b) is equitable in nature and is to be guided by equitable principles. See 11 Wright, Miller & Kane, Federal Practice and Procedure ("Wright, Miller & Kane") § 2857, at 255 (2d ed. 1995). The Rule is designed to strike a balance between the interests of fairness and the finality of judgments; nevertheless, "final judgments should not be lightly reopened." Nemaizer, 793 F.2d at 61 (internal quotation marks omitted); see also Ovadiah, 1997 WL 342411, at *5; Jedrejcic v. Croatian Olympic Comm., 190 F.R.D. 60, 76 (E.D.N.Y. 1999).

Relief under Rule 60(b)(6), in particular, is available only in "extraordinary circumstances," when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in the other clauses of Rule 60(b). See LeBlanc v. Cleveland, 248 F.3d 95, 100 (2d Cir. 2001); Transaero, Inc. v. La Fuerza Area Boliviana, 24 F.3d 457, 461 (2d Cir. 1994)

8

(quoting <u>Ackermann v. United States</u>, 340 U.S. 193, 199, 71 S. Ct. 209, 212 (1950)); <u>Nemaizer</u>, 793 F.2d at 63; <u>United States v. Cirami</u>, 563 F.2d 26, 32 (2d Cir. 1977) ("Clause (6) . . . has been described . . . as a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses . . . It is well established, however, that a proper case for Rule 60(b)(6) relief is only one of extraordinary circumstances.") (internal citations and quotation marks omitted). By definition, such circumstances are rare, and courts will deny relief where "the movant made a fair and deliberate choice at some earlier time not to move for relief." Wright, Miller & Kane § 2864; <u>see also</u> <u>Romania v. Wildenstein & Co.</u>, 147 F.R.D. 62, 65 (S.D.N.Y. 1993) (denying motion where movant's earlier derelictions were "best characterized as a deliberate litigation strategy"); <u>Wagner Spray Tech Corp. v. Wolf</u>, 113 F.R.D. 50, 51 (S.D.N.Y. 1986) ("[The movant's] interest in undoing the results of a litigation strategy which, in hindsight, appears unwise fails to outweigh the judiciary's interest in the finality of judgments.").

Although an attorney's negligence or dereliction of his duties cannot serve to excuse the client from its consequences, an attorney's "constructive disappearance" from a case due to a psychological disorder has been recognized as being an "exceptional circumstance" justifying Rule 60(b)(6) relief. See <u>Cirami</u>, 563 F.2d at 34-35; <u>accord</u> <u>Amorosi v. Comp USA</u>, No. 01 Civ. 4242 (KMK), 2005

9

WL 66605, at *4-5 (S.D.N.Y. Jan. 12, 2005); Alvarado v. Manhattan Worker Career Ctr., No. 01 Civ. 9288 (CBM), 2003 WL 22462032, at *3 (S.D.N.Y. Oct. 30, 2003).

> To be "extraordinary circumstances" for purposes of Rule 60(b)(6), a lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance or constructive disappearance.

Harris v. United States, 367 F.3d 74, 81 (2d Cir. 2004) (internal citations omitted).

As with all motions under Rule 60(b), the evidence in support of a 60(b)(6) motion must be highly convincing; there must be a showing that undue hardship will not result to other parties by granting the relief; and the movant must demonstrate that he possesses a meritorious claim or defense.

## II. Application to Plaintiffs' Circumstances

### A. Extraordinary Circumstances

Plaintiffs have submitted evidence demonstrating that, during a critical period in this litigation, when Plaintiffs' were warned that this action was subject to dismissal, their attorney effectively abandoned the case because of emotional and psychological turmoil. He consciously kept himself ignorant of Court proceedings, and failed to respond to Court inquiries and orders. Indeed, when the Court's staff attempted to contact his office, it found his voice mailbox full, demonstrating a more general abandonment of responsibilities. See P.T. Busana Idaman

<u>Nurani v. GHR Indus. Trading Corp.</u>, 151 F.R.D. 32, 34 (S.D.N.Y. 1993) (observing that when an "able attorney, which [f]ormer [c]ounsel appears to have been, suddenly ignores [c]ourt orders and is unable to be reached despite diligent attempts, it does not require medical expertise to know that something is obviously wrong with counsel") (internal quotation marks and alterations omitted).

Defendants argue that Plaintiff's counsel's psychological impairment is only vaguely documented, with little explanation of how his psychological condition specifically caused or contributed to the failures in this case. Moreover, they point to Mr. Hoffman's activities in other cases, and contend that there is no basis to conclude that his psychological condition affected this case, when it appears not to have affected his other cases. (<u>See</u> Affirmation of Patrick M. Murphy, Esq. in Opposition, dated Feb. 4, 2009 ("Murphy Aff."), ¶¶ 9-12.)

The Court finds the documentation of Mr. Hoffman's impairment to be sufficient. He has provided a psychologist's report and declaration, and his own sworn affidavit, describing his condition and its causes, including the loss of his apartment, the loss of his most important case, and the loss of his office. These materials provide adequate support for the conclusion that Mr. Hoffman's psychological condition was an exceptional circumstance that resulted in his "disappearance" from this action. <u>Compare</u> <u>GHR Indus. Trading Corp.</u>, 151 F.R.D. at 34 (granting relief pursuant to

Rule 60(b) where "[f]ormer [c]ounsel and her psychiatrist have stated in affidavits that [counsel] was undergoing treatment for severe depression at the time" the court dismissed the case) with Blazina v. Port Authority of New York, No. 06 Civ. 0481 (KNF), 2009 WL 1097322, at *5 (S.D.N.Y. Apr. 22, 2009) (where no evidence was submitted showing that counsel has a psychological disorder, and counsel merely failed to meet deadlines and make timely appearances, court declined to grant Rule 60(b)(6) relief).

Moreover, Plaintiffs' present counsel has responded to Defendants' contention that Mr. Hoffman appears to have been fully capable of fulfilling his responsibilities on his other cases. In fact, in two of the cases cited by Defendants, among others, Plaintiffs' present counsel was substituted for Mr. Hoffman as part of Hoffman's effort to reduce his caseload. (See Reply Declaration of Joseph T. Roccanova, Esq. in Support of Motion Pursuant to Rule 60(b)(6), dated Mar. 3, 2009 ("Roccanova Reply Decl."), ¶¶ 8-9.) In several other cases referred to by Defendants, the activity undertaken by Mr. Hoffman was de minimis, and occurred largely outside the critical period in this action. (See id. ¶¶ 10-12.)

It is true that Hoffman's abandonment of his responsibilities occurred over a period of only two months, suggesting that his psychological debilitation could not have been so severe. Yet, during those two key months he failed to respond to telephone calls, did not keep apprised of Court orders, and made no effort to

12

comply with or even respond to Court orders which threatened the dismissal of this action. His constructive abandonment of the case under these circumstances, combined with the psychological assessment submitted by the psychologist by whom he continues to be treated, leads the Court to conclude that these are exceptional circumstances which led to the dismissal of this action — a consequence for which Plaintiffs should not be held responsible.

Nevertheless, this conclusion only applies to the July 30 Order dismissing the action. It is the Court's view that the July 15 Preclusion Order, resulting from the failure to produce required discovery, was as much a result of Plaintiffs' own conduct as that of their attorney. At the time that Defendants voiced their objections to Plaintiffs' inadequate discovery responses, Mr. Hoffman was still engaged in the case. He participated in conferences with the Court, voiced objections to certain requests, conducted depositions of Defendants, and was apprised of the need to provide responsive documents, particularly documents demonstrating Plaintiffs' claimed damages. There is evidence demonstrating that he communicated to Plaintiffs the need to supplement their discovery responses, as they did provide some documents to Defendants, albeit wholly inadequate. Indeed, while Plaintiffs contend that they were not aware that the case was at risk of being dismissed as a result of Mr. Hoffman's unresponsiveness to Court inquiries, nowhere in their submissions

13

do they claim that they were unaware of Defendants' discovery requests or the Court Order requiring them to supplement the documentation of their claimed damages. (See Declaration of Jeffrey Boehner, dated Nov. 7, 2008; Declaration of Tom Fok, dated Nov. 7, 2008.)

Plaintiffs' failure to adequately itemize and document their claimed lost sales and profits damages, as they were ordered to do, was not caused by an "extraordinary circumstance," as it was Plaintiffs themselves who provided insufficient information to Defendants, through Mr. Hoffman. Although Plaintiffs contend that they do not need to plead or prove special damages as a result of defamation per se, to the extent that they were claiming any special damages, such damages have been and remain precluded.

B. Meritorious Claims

"A precondition of relief from a judgment is that the movant show that he or she has a meritorious [claim or] defense," so that vacating the judgment will not be an empty exercise. 12 James Wm. Moore et al., Moore's Federal Practice, § 60.24[1], at 60-83 (3d ed. 2008); accord Cirami, 563 F.2d at 35 ("Where one timely seeking Rule 60(b)(6) relief from a default judgment can make out a strong case that he had a meritorious defense which could have been asserted but for a truly extraordinary turn of events . . . and which brought about his default and resulted in substantial injustice to him, it is appropriate to vacate the judgment so that

14

the merits of his case can be considered."); <u>Alvarado</u>, 2003 WL 22462032, at *3 ("Even where the movants show that their motion to reopen is encompassed by the grounds enumerated in Rule 60(b), they must still show that they possess a meritorious claim before they can prevail.") (quotation marks omitted).

Nevertheless, a party is not required to demonstrate its likelihood of prevailing in an action before it can be relieved of a judgment. "The frequently quoted standard is that the moving party must make allegations that, *if established at trial*, would constitute a valid claim or defense." 12 <u>Moore's Federal Practice</u> at § 60.24[2], 60-84 (emphasis in original); <u>accord</u> <u>New York v. Green</u>, 420 F.3d 99, 109 (2d Cir. 2005); <u>Knox v. Palestine Liberation Organization</u>, 248 F.R.D. 420, 427 (S.D.N.Y. 2008).

Plaintiffs are involved in the ginseng trade business. Defendants comprise a trade organization of Wisconsin ginseng growers, wholesalers, and retailers, as well two of the organization's individual members. The Complaint alleges, among other things, that Defendants leveled false, defamatory, and libelous accusations against Plaintiffs, and communicated them to Senator Russell Feingold of Wisconsin. Defendants allegedly represented that (1) Plaintiffs were importing contaminated ginseng root into New York; (2) Plaintiffs had been identified by the Customs Service as known importers of contaminated ginseng root; (3) Plaintiffs had been illegally avoiding customs inspections; (4)

15

Plaintiffs had surreptitiously switched product labels on their ginseng shipments; (5) one of the Plaintiffs had been taking advantage of a past employment relationship with the Customs Service in order to escape mandated product inspections; and (6) that there was a stockpile of contaminated and mislabeled ginseng hidden in Plaintiffs' warehouse.   According to Plaintiffs, the purpose of these accusations was to convince the United States Customs Service in New York to detain shipments of Plaintiffs' ginseng product.   They assert that Senator Feingold subsequently caused the Customs Service to subject their imported ginseng shipments to extraordinary inspections and delays, which resulted in the loss of substantial revenue.   By these means, Plaintiffs argue, Defendants fulfilled their objective of gaining a competitive advantage over Plaintiffs' ginseng trade business in New York.   (See Compl. at 4, 6-10.)

Defendants contend that evidence in the case demonstrates that, on at least two occasions, Plaintiffs did import contaminated ginseng into the United States, and, thus, because the statements they made about Plaintiffs were true, they cannot be defamatory or libelous. (See Defendants' Memorandum of Law in Opposition ("Defs.' Mem.") at 8.)  Plaintiffs, however, dispute the truthfulness of the statements and, in any event, argue that Defendants fail to address the other libelous statements that they made.

The parties' disagreement involves a factual dispute that this

16

Court need not, and cannot, resolve at this juncture. The relevant question is whether Plaintiffs have made allegations which, if proven at trial, would entitle them to relief. On this issue, they have done so.[1]

Defendants further contend that, even if the statements they made are found to be defamatory, they were privileged and Defendants are entitled to qualified immunity, because they were made to a United States Senator from Wisconsin, with whom Defendants had a common interest in advancing the well-being of Wisconsin's ginseng industry as well as protecting the health and safety of United States citizens. (Id. at 10.) Under New York law, which the parties agree applies in this action, even defamatory communications are subject to a qualified privilege if they are made by one person to another upon a subject in which both have an interest. See Liberman v. Gelstein, 80 N.Y.2d 429, 437, 590 N.Y.S.2d 857, 862 (1992); Curren v. Carbonic Sys., Inc., 58 A.D.3d 1104, 1106, 872 N.Y.S.2d 240, 242 (3d Dep't 2009).

Plaintiffs acknowledge this principle but correctly argue that for statements to be privileged they must be made for a proper purpose, and they must not be made out of malice or ill will.

---

[1] Although Defendants did file a motion to dismiss earlier in this action, it was based only on challenges to subject matter and personal jurisdiction, venue, and the propriety of service of process. That motion was denied. See Boehner v. Heise, 410 F. Supp. 2d 228 (S.D.N.Y. 2006). Defendants did not move to dismiss the Complaint for failure to state a claim for relief.

Malice has a dual meaning in this context: (1) that derived from federal constitutional law, which applies to statements made with knowledge that they are false or with a high degree of awareness that they are probably false, and (2) common law malice, which encompasses false statements made out of spite or ill will. See Liberman, 80 N.Y.2d at 437-38, 590 N.Y.S.2d at 862-63; Curren, 58 A.D.3d at 1106-07, 872 N.Y.S.2d at 242.  Plaintiffs contend that, in the instant case, Defendants made false statements knowing that they were false, and they made them maliciously, acting out of self-interest and to gain a competitive advantage. (See Compl. ¶¶ 32-39.)

Whether the evidence in the case, and the inferences to be drawn from the evidence, will support Plaintiffs' contentions is a matter to resolved by the fact-finders in this action.  For present purposes, it suffices that the allegations, if proven, are sufficient to support a claim for defamation.

Defendants also contend that Plaintiffs' claims, other than those for libel and defamation, are barred by the Noerr-Pennington doctrine. (See Defs.' Mem. at 14-15.)   They contend that this doctrine, which arose in the antitrust context, has been applied more generally to shield citizens who have petitioned the government from suit for, among other things, tortious interference with contract, regardless of their motives.

The New York courts have indeed recognized this doctrine in

18

order to protect the First Amendment right to petition the
government from claims brought under federal and state law. See
Singh v. Sukhram, 56 A.D.3d 187, 191-92, 866 N.Y.S.2d 267, 272 (2d
Dep't 2008); Alfred Weissman Real Estate, Inc. v. Big V
Supermarkets, Inc., 268 A.D.2d 101, 106-07, 707 N.Y.S.2d 647, 652-
53 (2d Dep't 2000). Nevertheless, the Court need not dwell on this
issue as Plaintiffs have asserted at least one claim, for breach of
contract, that is not dependent upon the alleged defamatory
statements made to government officials. (See Compl., Fifth Cause
of Action.) Thus, the Noerr-Pennington doctrine does not preclude
all possible recovery in this action.

Finally, Defendants contend that Plaintiffs have failed to
demonstrate a causal relationship between any alleged libelous
statements and injuries they claim to have sustained. Plaintiffs
respond, however, that they have pled and will prove defamation per
se, which does not require pleading or proving special damages. See
Liberman, 80 N.Y.2d at 434-35, 590 N.Y.S.2d at 860-61. Moreover,
Plaintiffs have also pled a claim of breach of contract, involving
separate damages. Therefore, Defendants' contention — that there
is no causal relationship between any alleged defamation and
provable damages — does not preclude any possible recovery by
Plaintiffs.

For the foregoing reasons, the Court is unable to conclude at
this stage in the proceeding that Plaintiffs' claims all lack merit

and that there is no possibility of any recovery in this action. This is not to suggest that the Court finds merit in the claims or that Plaintiffs will ultimately prevail and recover damages in this proceeding.

**CONCLUSION**

Because the Court concludes that its July 30 Order dismissing this action was the direct result of an extraordinary circumstance — the psychological debilitation of Plaintiffs' counsel, who effectively abandoned the case in the summer of 2008 — the Court exercises its discretionary authority to grant Plaintiffs' motion to vacate the Order of Dismissal.  The Court declines to vacate its July 15 Order to the extent that it precludes any claim for special damages resulting from Defendants' alleged defamatory statements. The failure to itemize and produce adequate support for such damages was the result of Plaintiffs, as well as their attorney's, failure to produce adequate discovery responses, and to comply with their obligations under the Federal Rules of Civil Procedure.  It was not the result of an extraordinary circumstance that justifies equitable relief.

So Ordered.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: May 14, 2009
       New York, New York